UNITED STATES DISTRICT COURT
FOR DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JUDITH PRINZO, on behalf of herself and all other employees similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO. 1:21-cv-10968 |
| v. | ) ) ) | |
| HANNAFORD BROS. CO., LLC, | ) ) ) | |
| Defendant. | ) ) ) | |

**<u>DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ......................................................................................................1

PROCEDURAL HISTORY .......................................................................................2

THE PARTIES' MEET AND CONFER .....................................................................2

STATEMENT OF RELEVANT FACTS ....................................................................3

      A.     Plaintiff's salary and bonus information....................................................3

      B.     Salary and bonus information for the putative class members .....................4

      C.     Sunday and Holiday pay premium information .........................................4

      D.     Assumed overtime hours for reasonably estimating overtime damages ....5

SUBJECT MATTER JURISDICTION REQUIREMENTS .............................................5

ARGUMENT ..........................................................................................................7

      A.     Plaintiff's Motion ignores the two-phased removal analysis .......................7

      B.     There is a "reasonable probability" that this case satisfies the amount in
            controversy requirements under both 28 U.S.C. § 1332(a) and CAFA........................9

           1.     The parties disagree as to the proper overtime damages method in this case. ...10

           2.     There is a reasonable probability that Plaintiff's requested relief exceeds
                $75,000 for her individual claims under either damages method......................11

                (i)     The reasonably estimated trebled damages on Plaintiff's overtime,
                      Sunday, and Holiday pay claims already exceed $75,000 under the 1.5x
                      damages method and equal $53,933.58 under the half-time damages
                      method. ...............................................................................................11

                (ii)    Even if the Court applies the half-time damages method or Plaintiff
                      stipulates to that method, Plaintiff's request for attorneys' fees brings
                      the total amount in controversy above $75,000.........................................13

            3.     There is a reasonable probability that Plaintiff's requested relief exceeds
                 $5,000,000 for her class action claims under either damages model. ...............15

CONCLUSION......................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alper v. Select Portfolio Serv., Inc.*,
   No. 19-cv-10436-DJC, 2019 WL 3281129 (D. Mass. July 19, 2019)....................................16

*Amoche v. Guarantee Trust Life Ins. Co.*,
   556 F.3d 41 (1st Cir. 2009).................................................................................2, 6, 12

*Benson v. SI Handling Systems, Inc.*,
   188 F.3d 780 (7th Cir. 1999) ......................................................................................19

*Castillo v. Trinity Servs. Grp., Inc.*,
   1:19-cv-01013-DAD, 2020 WL 3819415 (E.D. Cal. July 7, 2020) .........................18

*Chavez v. JPMorgan Chase & Co.*,
   888 F.3d 413 (9th Cir. 2018) ..........................................................................9, 11, 18

*Dart Cherokee Basin Oper. Co. v. Owens*,
   574 U.S. 81 (2014)................................................................................... *passim*

*Dep't of Rec. & Sports of Puerto Rico v. World Boxing Ass'n.*,
   942 F.2d 84 (1st Cir. 1991)..........................................................................................15

*Dias v. Genesco, Inc.*,
   365 F. Supp. 3d 158 (D. Mass. 2019) ..................................................................8, 15

*Drake v. Aerotek, Inc.*,
   No. 14–cv–216–bbc, 2015 WL 5707052 (W.D. Wisc. Sept. 25, 2015) ...................18

*Faltaous v. Johnson & Johnson*,
   No. 07-1572-JLL, 2007 WL 3256833 (D. N.J. Nov. 5, 2007) .........................11, 18

*Fritsch v. Swift Transportation Co. of Az., LLC*,
   899 F.3d 785 (9th Cir. 2018) ......................................................................................15

*Hogan v. Wal-Mart Stores, East, L.P.*,
   No. 13–603-S, 2014 WL 66658 (D.R.I. Jan. 8, 2014)...............................................9

*Huston v. FLS Language Centers*,
   18 F. Supp. 3d 17 (D. Mass. 2014) ..............................................................................6

*Lalli v. General Nutrition Ctrs.*,
   814 F.3d 1 (1st Cir. 2016)...........................................................................................10

*Lucas v. Ultima Framingham LLC*,
    973 F. Supp. 3d 98 (D. Mass. 2013) ........................................................9, 10, 18

*Manson v. GMAC Mortg., LLC*,
    602 F. Supp. 2d 289 (D. Mass. 2009) ..................................................................16

*Marcus v. Am. Contract Bridge League, Inc.*,
    17-11165-FDS, 2021 WL 1132161 (D. Mass. Mar. 24, 2021) ............................10

*Meredith Springfield Associates, Inc. v. Puma Logistics, LLC*,
    17-cv-30035-MGM, 2018 WL 3340370 (D. Mass. May 7, 2018) ........................13

*Mitchell v. Select Comfort Retail Corp.*,
    20-cv-10110-DJC, 2020 WL 4049895 (D. Mass. July 20, 2020) ..................5, 6, 13

*Overnight Motor Transp. Co., Inc. v. Missel*,
    316 U.S. 572 (1942) ......................................................................................10, 11

*Pazol v. Tough Mudder, Inc.*,
    819 F.3d 548 (1st Cir. 2016) ................................................................................8

*Polanco v. Amguard Insurance Co.*,
    No. 18-0331-CFC, 2018 WL 6380707 (D. Del. Dec. 6, 2018) ..........................7, 8

*Roundtree v. Primeflight Aviation Servs., Inc.*,
    No. 16–9609 (CCC), 2017 WL 3207439 (D.N.J. July 28, 2017) ....................12, 13

*Sierra v. Progressive Direct Ins. Co.*,
    No. 12-30020-FDS, 2012 WL 4572923 (D. Mass. Sept. 28, 2012) ..................6, 16

*Spielman v. Genzyme Corp.*,
    251 F.3d 1 (1st Cir. 2001) ..................................................................................10

*In re: Stryker LFIT V40 Femoral Health Prods. Liab. Litig.*,
    1:19-cv-11268, 2020 WL 3037103 (D. Mass. June 4, 2020) ................................8

*Sullivan v. Sleepy's LLC*,
    482 Mass. 227 (2019) ........................................................................................12

*Swift v. Autozone, Inc.*,
    441 Mass. 443 (2004) ........................................................................................12

*Vilaythong v. Sterling Software, Inc.*,
    353 F. Supp. 3d 87 (D. Mass. 2018) ..................................................................10

*Waithaka v. Amazon.com, Inc.*,
    17-40141-TSH, 2018 WL 4092074 (D. Mass. Aug. 28, 2018) ............................15

*Waithaka v. Amzon.com, Inc.*,
    363 F. Supp. 3d 210 (D. Mass. 2019) ...................................................................................18

*Williams v. Toys "R" Us – Delaware, Inc.*,
    No. 15-13943-MLW, 2016 WL 5723588 (D. Mass. June 28, 2016)..................................6, 17

**Statutes**

28 U.S.C. § 1332(a) ................................................................................................ *passim*

28 U.S.C. § 1332(d) .........................................................................................................6

28 U.S.C. § 1446(a) .........................................................................................................7

**Other Authorities**

Local Rule 7.1(a)(2) .................................................................................................3, 10

Local Rule 16.1 ..............................................................................................................14

## INTRODUCTION

Plaintiff's Motion to Remand focuses solely on whether this case satisfies the $5 million amount in controversy requirement under the Class Action Fairness Act ("CAFA") and the $75,000 amount in controversy requirement under 28 U.S.C. § 1332(a). Tellingly, Plaintiff's Motion stops short of arguing that this case does not satisfy these jurisdictional minimums. Indeed, even though all of the information necessary to calculate Plaintiff's alleged damages is readily at her fingertips, Plaintiff has failed to offer *any* calculations or evidence as to the amount in controversy. This is because, if Plaintiff is forced to do the math herself, her Motion fails.

Instead, Plaintiff's Motion focuses exclusively on the form of Hannaford's Notice of Removal, making the cursory argument that the Notice lacks "sufficient facts" and does not "show the math" to support removal. Pl.'s Mot. [ECF No. 17] at 2. This argument, however, ignores the Supreme Court's holding in *Dart Cherokee Basin Oper. Co. v. Owens*, 574 U.S. 81 (2014), that "defendants may simply allege or assert [in the removal notice] that the jurisdictional threshold has been met" and need only submit evidence when removal is challenged by plaintiff or questioned by the court. *Id.* at 84. *Dart* makes clear that if, *and only if*, the plaintiff "contests the defendant's allegations," then "*both sides* submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied." *Id*. (emphasis added). Hannaford's Notice more than satisfies *Dart*'s pleading requirement. Plaintiff cannot seriously argue otherwise.

Even at this evidentiary phase, Hannaford's burden is not a heavy one, and Hannaford only needs to show that there is a "reasonable probability" that the case satisfies the amount in controversy requirements under either CAFA or § 1332(a). *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 49 (1st Cir. 2009). Hannaford has not merely met its burden, but has gone above

and beyond what is required at this stage.  As discussed below, Hannaford has provided the Court a detailed estimate of the alleged damages based on Plaintiff's and each putative class member's salaries, annual incentive compensation, and scheduled Sunday and Holiday hours.  This is more than enough to allow the Court to conclude that there is a reasonable probability that the amount in controversy is satisfied.  Plaintiff's Motion should be denied.

## PROCEDURAL HISTORY

On April 28, 2021, Plaintiff filed a Class Action Complaint in Plymouth County Superior Court on behalf of herself and a purported class of current and former "department managers" in Massachusetts.  *See* Hannaford's Notice of Removal [ECF No. 1] at Ex. A ("Compl.") at ¶ 3. Plaintiff alleges that Hannaford improperly classified the department managers as "exempt" under the Massachusetts Wage Act ("MWA"), and she seeks allegedly unpaid overtime and Sunday and Holiday premium pay for herself and the purported class, treble damages, and attorney's fees.  *Id*. at ¶¶ 48, 52, 57.  The relevant time period for Plaintiff's individual and class claims is April 28, 2018 to the present.  *Id*. at ¶ 3.

On June 9, 2021, Hannaford timely removed the case.  As stated in Hannaford's Notice of Removal, the Court has subject matter jurisdiction over Plaintiff's putative class action under CAFA because: (1) the putative class consists of at least 100 proposed class members; (2) the citizenship of at least one proposed class member, Plaintiff, is different from that of Hannaford; and (3) the matter in controversy, after aggregating the claims of the proposed class members, exceeds $5 million.  *See* Hannaford's Notice at ¶ 4.  The Court also has subject matter jurisdiction over Plaintiff's individual claims pursuant to 28 U.S.C. § 1332(a) because the citizenship of Plaintiff and Hannaford are different and the matter in controversy with respect to Plaintiff's individual claims exceeds $75,000.  *See id.* at ¶ 5.

In her July 9, 2021 Motion to Remand, Plaintiff concedes that diversity of citizenship exists under both CAFA and § 1332(a), and she further admits that this case satisfies CAFA's 100-person class-size requirement. *See* Pl.'s Mot. at 3, n.1. Thus, Plaintiff's Motion only questions whether the case satisfies the amount in controversy requirements under CAFA and § 1332(a).

### THE PARTIES' MEET AND CONFER

Before Plaintiff filed her Motion, the parties conferred multiple times pursuant to Local Rule 7.1(a)(2) regarding the amount in controversy issues presented by Plaintiff's Motion. During these meet and confer conferences, the parties discussed a number of assumptions that could be reasonably made for the purposes of calculating the amount in controversy. Among other things, Plaintiff's counsel indicated that it was reasonable to assume that Plaintiff and the putative class members will claim that they worked approximately 10 hours of overtime per week, with the understanding that they would not likely claim overtime damages for weeks in which they were on vacation or some other form of leave.

During the meet and confer process, the parties also discussed the proper way to calculate the alleged damages in this case. However, the parties have been unable to reach an agreement as to the method for calculating Plaintiff's and the putative class members' alleged overtime damages. That failure to agree is, alone, fatal to Plaintiff's Motion, as demonstrated below.

### STATEMENT OF RELEVANT FACTS

**A.**    **Plaintiff's salary and bonus information.**

Plaintiff was employed as an exempt Bakery Sales Manager at Hannaford's Middleboro, Massachusetts store from January 28, 2008 until January 29, 2021. *See* Compl. at ¶ 5; *see also* Exhibit 1 (Declaration of Sean O'Connor ("O'Connor Decl.") at ¶ 3). During the relevant time period, Plaintiff's annual salary was as follows: $56,556.33 for the period April 28, 2018 through

April 20, 2019; $58,535.80 for the period April 21, 2019 through April 18, 2020; and $60,584.55 for the period April 19, 2020 through January 29, 2021.  O'Connor Decl. at ¶ 4.

As an exempt Bakery Sales Manager, Plaintiff participated in Hannaford's annual Retail Management Incentive Plan ("RMIP"), which is an annual bonus program applicable to exempt managers.  *Id.* at ¶ 5.  For the RMIP plan years during the relevant time period, Plaintiff received the following annual incentive payments: $5,746.12 for the 2018 RMIP plan year; $6,509.17 for the 2019 RMIP plan year; and $7,270.14 for the 2020 RMIP plan year.  *Id.* at ¶ 6.

**B.**    **Salary and bonus information for the putative class members.**

Plaintiff seeks to represent a putative class of current and former "department managers" who worked in Hannaford's Massachusetts stores from April 28, 2018 to present.  Compl. at ¶ 3. Based on the class definition in the Complaint, the purported class consists of approximately 145 individuals who were employed in nine different exempt "department manager" positions: Manager of Customer Service, Produce Sales Manager, Center Store Manager, Bakery Sales Manager, Deli Sales Manager, Deli Bakery Sales Manager, Meat Market Sales Manager, Meat Market Seafood Sales Manager, and Deli Seafood Sales Manager.  O'Connor Decl. at ¶ 8.

During the relevant time period, the putative class members were paid salaries that ranged from approximately $42,800 to $73,060 per year.  O'Connor Decl. at ¶ 10.  The putative class members also participated in Hannaford's RMIP, and many of them received annual RMIP bonuses during the relevant time period.  O'Connor Decl. ¶ at 11; *see also* Exhibit 2 (Declaration of Peter Nickerson and Associates ("Nickerson Decl.") at ¶ 6).

**C.**    **Sunday and Holiday pay premium information.**

As exempt managers, Plaintiff and the putative class members were responsible for determining the weekly work schedule for themselves and the employees that they supervised.

O'Connor Decl. at ¶¶ 7, 12.  The schedules that Plaintiff and each class member prepared for themselves identify the Sunday and state-recognized Holidays that they scheduled themselves to work and the weeks that they scheduled themselves off for vacation and other time off.  *Id*. at ¶ 7.

**D.    Assumed overtime hours for reasonably estimating overtime damages.**

Because Hannaford classified its department managers as exempt under the MWA, Hannaford did not require Plaintiff or the putative class members to record the hours or days that they worked.  However, Plaintiff alleges in the Complaint that she and the putative class members "regularly worked 45 hours a week and *often more*."  Compl. at ¶ 2 (emphasis added).  As noted above, the parties agreed during their meet and confer that, for purposes of the amount in controversy analysis, it was reasonable to assume that Plaintiff and the putative class members will claim to have worked approximately 10 hours of overtime each week, with the exception of the weeks when they were on vacation or some other form of leave.[1]

## SUBJECT MATTER JURISDICTION REQUIREMENTS

"Upon the filing a motion to remand, the Court must assess whether it would have had original jurisdiction of the case had it been filed in [federal] court."  *Mitchell v. Select Comfort Retail Corp.*, 20-cv-10110-DJC, 2020 WL 4049895, at *1 (D. Mass. July 20, 2020).  Under CAFA, this Court has subject matter jurisdiction over a class action if there is diversity of citizenship between the defendant and one or more of the class members; the proposed class includes 100 or more members; and the aggregated amount in controversy exceeds $5 million.  *See* 28 U.S.C. § 1332(d); *see also Dart*, 874 U.S. at 84.  This Court also has subject matter jurisdiction under 29

---

[1] To be clear, Hannaford does not agree or otherwise concede that Plaintiff or the putative class members worked any particular amount of overtime hours, and Hannaford denies that Plaintiff and the putative class members are entitled to any of the relief requested in the Complaint.  However, for purposes of calculating the amount in controversy, based on the meet and confer discussions, Hannaford understands that Plaintiff and the putative class members will *claim* to have worked at least 10 hours of overtime each week.

U.S.C. § 1332(a) when there is diversity of citizenship between the plaintiff and the defendant and the amount in controversy with respect to the named plaintiff's claims exceeds $75,000. *See* 28 U.S.C. § 1332(a).  In the class action context, the Court only needs to have jurisdiction under either CAFA or § 1332(a)—not both.  *See Huston v. FLS Language Centers*, 18 F. Supp. 3d 17, 21 n.1 (D. Mass. 2014).

Where, as here, the plaintiff's complaint does not allege a specific total amount of alleged damages, the defendant must only show by a "*reasonable probability* that more than $5 million is at stake in th[e] case for CAFA jurisdiction to attach." *Amoche*, 556 F.3d at 49 (emphasis added); *see also Mitchell*, 2020 WL 4049895, at *2 (applying the same "reasonable probability" standard for diversity cases under § 1332(a)).[2]  As this Court has recognized, "[t]his burden is not, however, a heavy one" and "because 'questions of removal are typically decided at the pleadings stage where little or no evidence has yet been produced,' the issue should be resolved without an extensive fact-finding inquiry or 'mini-trial' about the amount in controversy." *Sierra v. Progressive Direct Ins. Co.*, No. 12-30020-FDS, 2012 WL 4572923, at *2 (D. Mass. Sept. 28, 2012) (quoting *Amoche*, 556 F.3d at 50).

The removal analysis is even more flexible in the CAFA context.  As the Supreme Court has explained, "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court" and "CAFA's primary objective is to ensure Federal court consideration of interstate cases of national importance." *Dart*, 574 U.S. at 89.  To that end, "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court

---

[2] The Civil Action Cover Sheet filed by Plaintiff in her state court action, which lists the amount of damages as "$50,000+," is not controlling as to the amount in controversy.  *See Williams v. Toys "R" Us – Delaware, Inc.*, No. 15-13943-MLW, 2016 WL 5723588, at *1 (D. Mass. June 28, 2016) (holding that, where the civil cover sheet listed the damages as $60,000+, that amount was "[m]erely stating the low end of the range of damages" and did not "establish the amount in controversy").

if properly removed by any defendant." *Id*.  As such, "no antiremoval presumption attends cases invoking CAFA."  *Id*.

## ARGUMENT

### A.    Plaintiff's Motion ignores the two-phased removal analysis.

Plaintiff never actually states in her Motion that the amount in controversy is not satisfied. Indeed, Plaintiff has offered no evidence whatsoever as to the amount in controversy.  Plaintiff, instead, only argues that Hannaford's Notice is insufficient.  This argument misses the mark.

As the Supreme Court has explained, "a defendant seeking to remove a case to federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal' pursuant to 28 U.S.C. § 1446(a)."  *Dart*, 574 U.S. at 84 (quoting 28 U.S.C. § 1446(a)).  This is not an onerous requirement.  "When a defendant seeks federal-court adjudication, the defendant's amount in controversy allegation *should be accepted* when not contested by the plaintiff or questioned by the court."  *Id*. at 88 (emphasis added).  To that end, "defendants may simply allege or assert [in the removal notice] that the jurisdictional threshold has been met."  *Id*.; *see also Polanco v. Amguard Insurance Co.*, No. 18-0331-CFC, 2018 WL 6380707, at *3 (D. Del. Dec. 6, 2018) (holding that *Dart* "makes clear that a simple allegation or assertion of the amount in controversy is plausible if made in good faith").

If, and only if, the plaintiff "contests the defendant's allegations," then "*both sides* submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied."  *Dart*, 574 U.S. at 84 (emphasis added); *see also Dias v. Genesco, Inc.*, 365 F. Supp. 3d 158, 161 (D. Mass. 2019) (noting that "[t]he Supreme Court in *Dart* laid out a new landscape that the Court must traverse in determining the amount in controversy in a removed diversity case").  During this evidentiary phase, "it is not enough for the plaintiff to merely label the defendant's showing as speculative without discrediting the facts upon

which it results." *Pazol v. Tough Mudder, Inc.*, 819 F.3d 548, 552 (1st Cir. 2016). Rather, "[t]he decision as to whether the defendants have met their burden may well require analysis of what *both parties* have shown." *Id.* (emphasis in original).

Plaintiff has—strategically or not—refused to offer *any* calculations or evidence as to amount in controversy. That is reason enough to deny Plaintiff's Motion. *See In re: Stryker LFIT V40 Femoral Health Prods. Liab. Litig.*, 1:19-cv-11268, 2020 WL 3037103, at *4 (D. Mass. June 4, 2020) ("accept[ing]" defendant's assertion regarding the amount in controversy where plaintiff did not submit evidence showing that defendant's damages estimates were incorrect); *Polanco*, 2018 WL 6380707, at *5 (noting that plaintiff's failure to submit evidence with a motion to remand was a basis to deny the motion "outright" because plaintiff "intentionally ignored *Dart's* explicit teaching that both sides are to submit proof when the amount-in-controversy is challenged").

Though Plaintiff tries to excuse her lack of evidence as to the amount in controversy for her class claims based on Hannaford's "unique access to information," *see* Pl.'s Mot. at 6, that argument (whether compelling or not for her class claims) does not excuse Plaintiff's failure to offer calculations for her *own individual* claims. Plaintiff has all the information she needs to calculate her *own* alleged damages, including her annual salary and the amount of overtime hours that *she claims* she worked during the limitations period. Plaintiff's failure to even attempt to calculate damages for her individual claims, or offer any evidence to that effect, speaks volumes about Plaintiff's Motion, and the Court should reject any last-minute evidence raised by Plaintiff for the first time in her reply brief.[3]

---

[3] Given the complete lack of evidence in Plaintiff's Motion, Hannaford anticipates that Plaintiff has saved up whatever evidence she has marshalled for her reply brief. Not only is this type of procedural gamesmanship improper, but it will also deprive Hannaford of a meaningful opportunity to respond, especially after so many attempts to meet and confer regarding the details of Plaintiff's alleged damages. As such, Hannaford may need to ask the Court for leave to file a sur-reply in order to address any yet-unseen evidence from Plaintiff.

In sum, Hannaford's Notice easily satisfies *Dart's* initial pleading requirement. Hannaford explicitly, and in good faith, alleged in its Notice that the amount in controversy exceeded the jurisdictional minimums under both CAFA and § 1332(a). *See* Hannaford's Notice at ¶ 16. That is all that is required under *Dart*. Plaintiff, on the other hand, has failed to provide any evidence to legitimately question Hannaford's Notice, let alone any evidence to show that the amount in controversy is not satisfied in this case.

**B.** **There is a "reasonable probability" that this case satisfies the amount in controversy requirements under both 28 U.S.C. § 1332(a) and CAFA.**

The amount in controversy refers to "the amount at stake in the underlying litigation" and "includes all relief claimed [by the plaintiff] at the time of removal to which the plaintiff would be entitled if she prevails." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). The amount in controversy "is measured by the damages that the plaintiff might recover, assuming that the allegations in the complaint are true." *Hogan v. Wal-Mart Stores, East, L.P.*, No. 13–603-S, 2014 WL 66658, at *4 (D.R.I. Jan. 8, 2014). To calculate the amount in controversy, the court must examine the plaintiff's requested relief and analyze "the relevant state law to determine the nature and extent of the damages which may be awarded." *Lucas v. Ultima Framingham LLC*, 973 F. Supp. 3d 98, 102 (D. Mass. 2013).

When a plaintiff brings a claim under a statute that includes a damages multiplier (here, automatic trebling under the MWA), the court must include those damages in evaluating the amount in controversy. *Id.*; *Vilaythong v. Sterling Software, Inc.*, 353 F. Supp. 3d 87, 92 (D. Mass. 2018). The court must also take into account attorneys' fees where, as here, attorneys' fees are statutorily mandated. *Lucas*, 973 F. Supp. 3d at 102; *Vilaythong*, 353 F. Supp. 3d at 92; *accord Spielman v. Genzyme Corp.*, 251 F.3d 1, 7 (1st Cir. 2001) (attorneys' fees are included in the amount-in-controversy determination "when a statute mandates or allows payment of the fees").

**1.    The parties disagree as to the proper overtime damages method in this case.**

To state the obvious, the method used to calculate Plaintiff's and the putative class members' alleged damages has a direct impact on the amount in controversy analysis.  Hannaford contends that those damages should be calculated using the "half-time" method originally set forth in the Supreme Court's decision in *Overnight Motor Transp. Co., Inc. v. Missel*, 316 U.S. 572 (1942).  As explained in *Missel*, when a non-exempt employee is paid a fixed weekly salary, the time-and-a-half overtime premium requirement is satisfied when the employee is paid an overtime premium of 0.5-times her regular rate of pay for each hour worked in excess of 40.  *See id.* at 574. The Court reasoned that, if a non-exempt employee receives a fixed weekly salary, the employee has already been compensated the "time" in the "time-and-a-half" requirement through her salary. *Id.*  Therefore, only an additional half-time premium is due for all hours worked over 40 in a given workweek.  *Id.*; *see also Lalli v. Gen. Nutrition Ctrs.*, 814 F.3d 1, 2-3 (1st Cir. 2016) (discussing *Missel*); *Marcus v. Am. Contract Bridge League, Inc.*, 17-11165-FDS, 2021 WL 1132161, at *34-35 (D. Mass. Mar. 24, 2021) (holding that *Missel* provides the correct damages formula in an exemption misclassification case).

In accordance with Local Rule 7.1(a)(2), at several points both before and after Plaintiff filed her Motion, Hannaford has asked Plaintiff and her counsel to agree that *Missel*'s "half-time" method is the appropriate way to calculate Plaintiff's and the putative class members' alleged overtime damages in this case.  *See* Exhibit 3 (E-mail to Plaintiff's counsel).  To date, however, Plaintiff has been unable and/or unwilling to agree that *Missel* governs the calculation of damages in this case, which leaves open the possibility that Plaintiff will argue that a 1.5x damages method applies.  *See* Exhibit 4 (E-mail from Plaintiff's Counsel).  Under a 1.5x damages method, Plaintiff's and the putative class members' alleged damages would be calculated by dividing their weekly salaries by 40 and then multiplying their regular rate of pay by a premium of 1.5x for all

overtime hours. Needless to say, the possible damages under this method would be significantly higher because the divisor used for calculating the regular rate is lower and the multiplier applied to that regular rate is higher.

While Hannaford is confident that *Missel* guides the damages calculation applicable in the event of a finding of liability in this case, Plaintiff's refusal to date to agree to the application of a "half-time" damage calculation on *either* an individual or class-wide basis places those higher damage estimates "at stake" in the litigation and, as shown below, proves fatal to Plaintiff's Motion as a matter of law. *See Faltaous v. Johnson & Johnson*, No. 07-1572-JLL, 2007 WL 3256833, at *10 (D. N.J. Nov. 5, 2007) (discussing the effect of a dispute regarding overtime damages formula for the amount in controversy analysis); *Chavez*, 888 F.3d at 417 (holding that the amount in controversy "includes *all relief claimed* [by the plaintiff]") (emphasis added).

> **2.  There is a reasonable probability that Plaintiff's requested relief exceeds $75,000 for her individual claims under either damages method.**
>
> > (i)  <u>The reasonably estimated trebled damages on Plaintiff's overtime, Sunday, and Holiday pay claims already exceed $75,000 under the 1.5x damages method and equal $54,159 under the half-time damages method.</u>

Plaintiff alleges that she is entitled to unpaid overtime and Sunday and Holiday premiums throughout the limitations period, including mandatorily trebled damages under the MWA. Compl. at ¶¶ 48, 52. As detailed in Hannaford's expert's declaration, the estimated damages for Plaintiff's individual claims, when trebled, are $54,159 under the half-time damages method and $184,322 under the 1.5x damages method. Nickerson Decl. at ¶¶ 13, 16. These estimates do *not* include Plaintiff's request for attorneys' fees, which, as discussed below, must be included in the amount in controversy calculation.

These estimates are based on two reasonable assumptions. First, Hannaford's expert calculated the possible damages on Plaintiff's overtime claim based on the assumption that

Plaintiff will claim that she worked 10 hours of overtime each week during the limitations period, except for the weeks during the limitations period that Plaintiff scheduled herself to be off for vacation or other leave.  Second, in calculating the possible damages on Plaintiff's Sunday and Holiday pay claims, Hannaford's expert used the reasonable assumption that Plaintiff will claim that she worked all of the Sundays and Holidays that she scheduled herself to work during the limitations period.[4]

At this stage of the proceedings, these assumptions are entirely reasonable, particularly in light of the barebones allegations in Plaintiff's Complaint.  As courts have recognized, the amount in controversy cannot (and need not) be determined with mathematical precision, particularly where the plaintiff does "not place a limit on the number of overtime hours worked or overtime pay sought." *Roundtree v. Primeflight Aviation Servs., Inc.*, No. 16–9609 (CCC), 2017 WL 3207439, at *4 (D.N.J. July 28, 2017); *see also Amoche*, 556 F.3d at 49 (holding that the defendant only needs to show that there is a "reasonable probability" that the case satisfies the amount in controversy requirements).  A "defendant facing this type of claim has no choice but to attempt to fairly project the number of hours of allegedly uncompensated time or uncompensated overtime." *Roundtree*, 2017 WL 3207439, at *4.  "Placing a more demanding burden on a removing defendant would essentially preclude it from establishing the amount in controversy, but at the same time leave them exposed to unlimited damages. This can't be." *Id*.  Rather, "the concept of assessing the amount in controversy is to look at the claims made in the [c]omplaint and the proofs that the

---

[4] Importantly, Hannaford's expert did not double count the possible damages for Plaintiff's Sunday and Holiday pay claims.  *See, e.g.*, *Swift v. Autozone, Inc.*, 441 Mass. 443 (2004) (holding that an additional premium for Sunday work is not due when the employee is already paid an overtime premium for those hours); *Sullivan v. Sleepy's LLC*, 482 Mass. 227 (2019) (same).  Instead, Hannaford's expert only assigned Plaintiff additional potential damages for Sunday or Holiday work in the weeks that her scheduled Sunday and Holiday hours exceeded the 10 assumed overtime hours.  *See* Nickerson Decl. at ¶ 13.

parties can reasonably provide and determine [] the value of the rights being litigated." *Id*. That is precisely what Hannaford has done.

>    (ii)    Even if the Court applies the half-time damages method or Plaintiff stipulates to that method, Plaintiff's request for attorneys' fees brings the total amount in controversy above $75,000.

As noted above, the estimated alleged damages for Plaintiff's claims far exceed $75,000 under the 1.5x damages method *before* the Court considers her request for attorneys' fees. However, even if the Court applies the half-time damages method or Plaintiff ultimately stipulates to that method (notwithstanding her current refusal to do so), there is more than a "reasonable probability" that Plaintiff will incur the $20,841 in attorneys' fees needed to bring her individual total possible recovery above $75,000 using the half-time method.

Generally speaking, courts should include the amount of attorneys' fees that can be "reasonably estimated," *Mitchell*, 2020 WL 4049895, at *3, and judges in this District typically prefer to use the lodestar method to calculate the reasonable amount of attorneys' fees that are likely to be incurred. *See, e.g.*, *Meredith Springfield Associates, Inc. v. Puma Logistics, LLC*, 17-cv-30035-MGM, 2018 WL 3340370, at *4 (D. Mass. May 7, 2018). Under the lodestar method, the court generally "considers the number of hours reasonably spent on the case times a reasonable hourly rate." *Id.*

In the last two years, Plaintiff's lead counsel, Mr. Churchill, has submitted fee petitions in which he requested a rate of between $525 and $600 per hour in similar wage and hour cases. *See* Exhibit 5 (*Gammella v. P.F. Chang's China Bistro, Inc.*, No. 14-3703 (Mass. Sup. Ct., Suffolk Cnty), Assented-To Motion for Preliminary Approval of Class Action Settlement (Filed Mar. 8, 2021) at 4, ¶ 8 (requesting an hourly rate of $600)); Exhibit 6 (*Ouadani v. Dynamex Operations East, LLC*, No. 16-12036-PBS (D. Mass), Dkt. No. 115 (Assented-To Motion for Final Approve of Class Action Settlement (Filed Mar. 19, 2020) at 5, ¶ 11 (requesting an hourly rate of $525)).

If Mr. Churchill requests $600 per hour in this case, as he has done in the past, then Mr. Churchill would only need to spend 34.7 hours litigating Plaintiff's individual claims to generate $20,841 in attorneys' fees. But even if Mr. Churchill reduces his rate to $525, he would still only need to spend 39.6 hours litigating Plaintiff's individual claims to generate $20,841 in fees. Though Plaintiff has not provided Hannaford (or this Court) with her attorneys' fees to date, there is little doubt that her counsel has already spent significant time on the case, including investigating Plaintiff's claims, drafting and filing the Complaint, participating in meet and confers regarding the Local Rule 16.1 Joint Statement and Plaintiff's Motion, and briefing Plaintiff's Motion.

To the extent that Plaintiff has not already incurred sufficient attorneys' fees to satisfy the amount in controversy with respect to her individual claims using the half-time damages method, there is a "reasonable probability" – actually, a certainty – that Plaintiff's attorney will work the handful of additional hours needed to generate $20,841 in fees, including preparing initial disclosures, drafting and serving written discovery requests on Hannaford, drafting and responding to Hannaford's written discovery requests, preparing for and defending Plaintiff's deposition, and preparing for and taking depositions of Plaintiff's managers.

Given the indisputable reality that Plaintiff will incur additional attorneys' fees, these fees should be included in the amount in controversy calculation. *See Fritsch v. Swift Transportation Co. of Az., LLC,*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that "a court must include future attorneys' fees recoverable by statute when assessing whether the amount-in-controversy requirement is met," reasoning that "there is no question that future attorneys' fees are 'at stake' in the litigation"); *see also Dep't of Rec. & Sports of Puerto Rico v. World Boxing Ass'n.*, 942 F.2d 84, 90 (1st Cir. 1991) ("[A] reasonable estimate of attorney's fees may be included in determining whether the jurisdictional minimum is satisfied.").

Admittedly, there is somewhat of an open question in the First Circuit whether courts should include attorneys' fees incurred after removal in the amount in controversy calculation. However, Your Honor has previously recognized that excluding all attorneys' fees incurred after removal "troubles the Court." *See Dias*, 365 F. Supp. 3d at 164 (Young, J.). That is because mandatory attorneys' fees are "at stake" in the litigation. *Fritsch*, 899 F.3d at 794. Whatever the outer limits that might exist for including future attorneys' fees, the modest amount of additional future attorney's fees at issue here comes nowhere close to that limit. The First Circuit has repeatedly held that fees that can be "reasonably estimated" should be included. *Dep't of Rec. & Sports of Puerto Rico*, 942 F.2d at 90. Indeed, the cases where judges in this District have declined to include future attorneys' fees have involved unreasonable requests to include large amounts of attorneys' fees in order to satisfy the jurisdictional minimums. *See, e.g.*, *Waithaka v. Amazon.com, Inc.*, 17-40141-TSH, 2018 WL 4092074, at *2 (D. Mass. Aug. 28, 2018) (holding that it was "not reasonable" for "over two thirds of the estimated amount [to] come from attorney's fees").

That is simply not the case here. The estimated possible damages for Plaintiff's claims *already exceed* the amount in controversy requirements using the 1.5x damages method. However, even using the half-time damages method, Plaintiff only needs to incur $20,841 in attorneys' fees—the majority of which have likely *already been incurred*. As such, it is all but a foregone conclusion (and certainly a "reasonable probability") that Plaintiff has or will incur sufficient attorneys' fees to exceed the amount in controversy requirement under the half-time method.

**3.    There is a reasonable probability that Plaintiff's requested relief exceeds $5,000,000 for her class action claims under either damages model.**

As this Court has explained, "[b]ecause named plaintiffs purport to represent a class, their alleged damages provide an appropriate basis on which to calculate the damages for a typical class member." *Alper v. Select Portfolio Serv., Inc.*, No. 19-cv-10436-DJC, 2019 WL 3281129, at *3

15

(D. Mass. July 19, 2019).  Therefore, "to ascertain the amount in controversy, a court may simply multiply (1) the putative class size by (2) a class member's typical damages." *Id.*; *see also Sierra*, 2012 WL 4572923, at *2 (same); *Manson v. GMAC Mortg., LLC*, 602 F. Supp. 2d 289, 291 (D. Mass. 2009) (same).

Extrapolating Plaintiff's individual damages across the 145-person class would result in an estimated amount in controversy of over $7 million under the half-time damages method and over $26 million under the 1.5x damages method *before* including attorneys' fees.  But rather than relying on this extrapolation, Hannaford has taken the extra step of engaging an expert to reasonably estimate the alleged damages for each individual putative class member based on each putative class member's annual salary, annual incentive compensation, and Sunday and Holiday work schedules during the limitations period.

Based on the same reasonable assumptions that the expert used for Plaintiff's individual claims (namely, that the class members will claim that they worked 10 overtime hours per week except for weeks in which they were not at work due to vacation or other time off), the estimated alleged damages for the putative class members as of the June 9, 2021 date of removal were $4,769,383 under the half-time damages method and $16,558,433 under the 1.5x damages method *before* attorneys' fees.  *See* Nickerson Decl. at ¶ 14.  This means that the putative class members' alleged estimated damages *already exceeded* CAFA's $5 million amount in controversy requirement on the date of removal using the 1.5x damages method.

However, even using the half-time damages method, the putative class members' alleged estimated damages will exceed $5 million well before trial.  In particular, Hannaford continues to classify its department managers as exempt under the MWA, and it does not plan to change that classification before final judgment in this case.  *See* O'Connor Decl. at ¶ 9.  As a result, the

putative class members' alleged damages have continued (and will continue) to accrue each week until judgment is entered in this case.

These continuing damages are by no means speculative. Indeed, since the filing of Hannaford's Notice of Removal on June 9, 2021, Hannaford's expert estimates that the putative class members' estimated alleged damages using the half-time damages method have continued to accrue at the rate of approximately $28,313 per week.[5] *See* Nickerson Decl. at ¶ 15. That means that, as of tomorrow, August 7, 2021 (which is the end of the current workweek for overtime purposes), the putative class members' estimated alleged damages using the half-time method will exceed $5 million. These estimated alleged damages will only continue to accrue and are projected to rise to approximately $6.5 million by trial on September 6, 2022. *See* Nickerson Decl. at ¶ 15; ECF No. 22.

The estimated alleged damages that have accrued since the date of removal and the estimated alleged damages that will continue to accrue through the date of judgment must be included in the amount in controversy calculation. As this Court has repeatedly held, the amount in controversy "includes monies not yet due the plaintiff at that point—so long as the judgment will clearly and finally create an obligation to pay, over a number of years, a sum in excess of the jurisdictional amount." *Williams*, 2016 WL 5723588, at *2; *see also Lucas*, 973 F. Supp. 2d at 102 (same). In other words, "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal)—[r]ather, the amount in controversy is determined by the

---

[5] This projection is based on the estimated damages for each putative class member for the week ending on June 12, 2021—the week that Hannaford last queried the compensation information for all putative class members in order to calculate the amount in controversy estimates in response to Plaintiff's Motion. This projection does not include RMIP payments that the putative class members' are likely to receive for the 2021 RMIP plan year, which would further increase the damages that continue to accrue.

complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez*, 888 F.3d at 414.

This case is no different. There is no doubt that the putative class members' alleged damages have continued to accrue since Hannaford's June 9, 2021 removal and will continue to accrue through the date of judgment, and those estimated alleged damages must be included in the amount in controversy calculation. *See, e.g.*, *Faltaous*, 2007 WL 3256833, at *10 (denying motion to remand in overtime class action) ("Since the right to collect damages accruing after the filing of the complaint will necessarily be adjudicated in this case, these damages are properly counted against the amount in controversy."); *Drake v. Aerotek, Inc.*, No. 14–cv–216–bbc, 2015 WL 5707052, at *4 (W.D. Wisc. Sept. 25, 2015) (holding that alleged unpaid overtime through date of judgment must be included in amount in controversy calculation where the defendant continued to allegedly misclassify employees); *Castillo v. Trinity Servs. Grp., Inc.*, 1:19-cv-01013-DAD, 2020 WL 3819415 (E.D. Cal. July 7, 2020) (same).

In many respects, Plaintiff's Motion is largely futile, and Plaintiff is only putting off the inevitable. Even if Plaintiff stipulates that the half-time damages method applies and argues that the Court should not consider the estimated alleged damages that have already accrued since the time of removal or those estimated alleged damages that will accrue as the case progresses, Hannaford can simply remove the case again immediately upon remand because the putative class members' alleged estimated damages will have already exceeded $5 million by that time. *See Waithaka v. Amazon.com, Inc.*, 363 F. Supp. 3d 210, 212 (D. Mass. 2019) (allowing successive removals under CAFA based on the accrual of additional damages); *Benson v. SI Handling Systems, Inc.*, 188 F.3d 780, 781 (7th Cir. 1999) (holding that successive removal was appropriate where, following an initial remand, the "[p]laintiffs 'fessed up [as to the amount in controversy],

apparently believing that their earlier silence (coupled with the failed removal) had locked the case into state court . . . We see no reason to reward game-playing of this kind.").

Put simply, even before considering Plaintiff's attorneys' fees with respect to the class action claims, the estimated amount in controversy for Plaintiff's class action claims already exceeded $5 million under the 1.5x damages method at the time of removal and are now, as of the date of this filing, projected to have exceeded $5 million using the half-time method. Those estimated alleged damages will only continue to increase until final judgment is entered in this case.

## <u>CONCLUSION</u>

The amount in controversy analysis does not require mathematical precision. Hannaford must only show that there is a "reasonable probability" that the amount in controversy meets the jurisdictional minimums. In doing so, Hannaford can rely on reasonable assumptions to determine the total amount potentially at stake in the litigation, including a reasonable estimate of Plaintiff's attorneys' fees. Hannaford has more than satisfied its burden to show that the amount in controversy is satisfied under *either* damages method while, on the other hand, Plaintiff has failed to come forward with *any* evidence whatsoever. Plaintiff's Motion should be denied.

Respectfully submitted,

**HANNAFORD BROS. CO., LLC,**

By its attorneys,

By:  */s/ Christopher M. Pardo*_____
     Christopher M. Pardo (BBO# 674674)
      *cpardo@HuntonAK.com*
     Elizabeth L. Sherwood (BBO# 687866)
      *esherwood@HuntonAK.com*
     HUNTON ANDREWS KURTH LLP
     60 State Street, Suite 2400
     Boston, MA 02109
     Tel: (617) 648-2800
     Fax: (617) 433-5022

     - and -

     Ryan A. Glasgow (admitted *pro hac vice*)
      *rglasgow@HuntonAK.com*
     HUNTON ANDREWS KURTH LLP
     Riverfront Plaza, East Tower
     951 East Byrd Street
     Richmond, VA 23219
     Tel:  (804) 788-8791
     Fax:  (804) 343-4897

Dated:  August 6, 2021

## <u>CERTIFICATE OF SERVICE</u>

I, Christopher M. Pardo, hereby certify that I served the foregoing on all counsel of record, through the Court's CM/ECF e-filing system on August 6, 2021.

*/s/ Christopher M. Pardo*
Christopher M. Pardo
