# Exhibit 5

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT

SUFFOLK, SS.                                      Civil Action No. 14-3703

_____
                                              )
FELICE GAMMELLA, on behalf of                 )
himself and all others similarly situated,    )
                        Plaintiff             )  E-Filed 03/08/2021        (NJ)
v.                                            )
                                              )
P.F. CHANG'S CHINA BISTRO, INC.,              )
                        Defendant             )
_____       )

**ASSENTED-TO MOTION FOR PRELIMINARY APPROVAL OF
<u>CLASS ACTION SETTLEMENT</u>**

## Table of Contents

Background ........................................................................................................3

Terms of Proposed Settlement ..........................................................................4

Argument ..........................................................................................................6

    1. The settlement amount is fair, reasonable, and adequate. ...................................6

    2. The proposed incentive payment is fair and reasonable. ......................................9

    3. The proposed attorneys' fees and costs are fair and reasonable. ........................11

    4. The court should certify a settlement class for settlement purposes...................14

Conclusion ......................................................................................................15

Pursuant to Mass. R. Civ. P. 23(c), Plaintiff, on behalf of himself and all others similarly situated, and with the Defendant's assent, respectfully requests preliminary approval of a proposed settlement that resolves the above-captioned class action lawsuit. A copy of the settlement agreement is attached as Exhibit 1. Plaintiff also seeks approval of a proposed notice and claim form to be sent to class members, a copy of which is attached as Exhibit 2. A proposed order is attached as Exhibit 3.

## Background

This longstanding case arises from the Defendant's alleged failure to comply with the Massachusetts "reporting time" regulation, which requires employers to pay a guaranteed wage to hourly workers who report for a shift of more than three hours if they are "not provided with the expected hours of work." *See* 454 CMR § 27.04.[1] The reporting time regulation does not apply to employees who voluntarily leave before completing at least three hours of work. The Court previously denied Mr. Gammella's motion for class certification, finding inadequate evidence of numerosity. The Court then dismissed the case as moot after Defendant made an unaccepted individual settlement offer to the Plaintiff. The Plaintiff appealed, and on April 12, 2019, the Supreme Judicial Court reversed and remanded the case to this Court. *Gammella v. P.F. Chang's China Bistro, Inc.*, 482 Mass. 1 (2019). Following a further exchange of information and extensive arms-length negotiations, the parties have now reached a proposed class settlement.

---

[1] The reporting pay requirement is as follows: "When an employee who is scheduled to work three or more hours reports for duty at the time set by the employer, and that employee is not provided with the expected hours of work, the employee shall be paid for at least three hours on such day at no less than the basic minimum wage." *Id*. This regulation formerly was at 455 CMR § 2.03(1).

Each side faces significant risk and uncertainty with continued litigation. For the Plaintiff, he faces the risk that his motion for class certification will be denied on grounds other than numerosity. He also faces risk given ongoing uncertainties about the alleged reasons that he and members of the proposed class were cut from their shifts after working fewer than three hours – i.e., was it based on their voluntary request to go home or at the Defendant's request or direction? The Defendant, meanwhile, faces the ongoing risk that it will be deemed liable for all alleged violations for all members of the class, subjecting them to substantial liability, including mandatory treble damages, interest, and attorneys' fees. Collectively, these considerations, along with others, pose substantial risks to all parties, making settlement an attractive alternative to the unpredictability of continued litigation.

**Terms of Proposed Settlement**

The proposed settlement requires payment by the Defendant of $140,000, plus the employer's share of payroll taxes for any wage payments. This payment will be non-reversionary, meaning that none of it will be returned to the Defendant. For comparison purposes, and based on extensive data provided by the Defendant, Plaintiff calculated that the maximum amount of single damages in this case is about $76,803. That amount was determined by taking every incident when a Massachusetts employee was scheduled to work more than three hours but actually worked fewer than three hours, and multiplying the allegedly unpaid hours (i.e., three hours minus the hours actually worked) times the applicable minimum wage. The actual damages almost certainly are less, because it is unlikely that every reported incident of an employee working a shift of fewer than three hours constituted a violation of the reporting pay law. For example, on any occasion when an employee voluntarily requested to be cut – because they were sick, because they had other issues to attend to, etc. – there was no violation of the

4

reporting pay requirement. Significantly, the practices challenged in this case have changed, so on information and belief there are no ongoing violations affecting the class as a whole.

Of the total settlement amount, the agreement proposes that one-third (or $46,666) be allocated for attorneys' fees; that the Plaintiff receive an incentive payment of $20,000; that up to $10,000 be allocated to litigation and administrative costs (principally for the costs of a third-party administrator to manage the notice, claims, and payment process); and that at least $63,334 be distributed to members of the class.

The proposed settlement class includes the following: all hourly employees who worked for Defendant in Massachusetts at any time during the period November 27, 2011 and May 23, 2017 and who, during that period, had one or more shifts when they were scheduled to work more than three hours but worked fewer than three hours.

If the Court preliminarily approves the settlement and proposed notice, notice will be sent to members of the settlement class. Notice will be sent by regular mail (and by electronic mail or text notification, where possible), and any returned notices will be researched using commercially-available databases to find updated addresses. Class members will be given a period of 45 days to object to the settlement. Following this notice process, the Plaintiff will file an Assented-To Motion for Final Approval of Class Action Settlement, which will report on the results of the claim process and which will provide additional details regarding fees and costs.

Assuming that the settlement is finally approved after the claims process, all of the funds available for distribution to the class will be divided on a pro rata basis to the class members and payments will be mailed to them. Each claiming class member's share will be calculated based on their pro rate share of alleged damages.

Approximately 120 days after the payments are made, any checks that are undeliverable or that have not been cashed within 90 days will be donated in a *cy pres* award, net of any bank fees, to the Massachusetts IOLTA Committee. Additional details regarding the proposed settlement are set forth in the agreement itself, which is attached as Ex. 1.

## Argument

A class action may not be settled or compromised without the approval of the Court. Mass. R. Civ. P. 23(c). At the preliminary approval stage, a court should determine whether there is cause "to submit the [settlement] to class members" and hold a later hearing "as to its fairness." *In re Traffic Executive Ass'n,* 627 F.2d 631, 634 (2d Cir. 1980). *See also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") (4th ed. 2002) § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness…and appears to fall within the range of possible approval," the court should permit notice to issue.). After the notice period, the Court will hold a further hearing to consider final approval in light of the class members' response to the notice and all other relevant information.

**1.    The settlement amount is fair, reasonable, and adequate.**

It is well established that settlements are favored. *Newberg on Class Actions*, §11:41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy"). *See also Cabot Corp. v. AVX Corp.*, 448 Mass. 629, 638 (2007) (recognizing a "well-established public policy favoring the private settlement of disputes"); *E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 73 8, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement" of class action claims.).

The advantages to the parties and the courts are particularly apparent in the compromise of class actions, which are "often complex, drawn out proceedings demanding a large share of

finite judicial resources." *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993). *See also*

*Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("In the class action context in particular,

'there is an overriding public interest in favor of settlement,' [which] minimizes the litigation

expenses of both parties and also reduces the strain such litigation imposes upon already scarce

judicial resources").

      Before granting approval of a proposed class action settlement, the Court must find that

the settlement is fair, reasonable, and adequate. *Sniffin v. Prudential Ins. Comp.*, 395 Mass. 415,

421-22 (1985). "In determining whether the settlement is fair, reasonable, and adequate, a trial

judge should consider various factors." *Id.* at 422. A presumption of fairness is established where

the parties can show that: (1) the settlement was the product of arms' length bargaining; (2)

sufficient discovery and investigation has been taken to enable counsel to act intelligently; (3)

the proponents of the settlement are counsel experienced in similar litigation; and (4) the number

of objectors or interests they represent is not large when compared to the class as a whole.

*Newburg on Class Actions* § 11:41. *See also In re M3 Power Razor System Marketing & Sales*

*Practice Litigation*, 270 F.R.D. 45, 62-63 (D. Mass. 2010) (identifying same factors as

establishing a "presumption that the settlement is within the range of reasonableness").

      All of these considerations are satisfied here. Indeed, all four factors should be

considered against the backdrop of the long history of this case. The claims in this case were first

asserted against the Defendant more than six years ago. The parties have engaged in intensive

litigation, including comprehensive background investigations, discovery, extensive motion

practice, numerous court appearances, and an appeal to the Supreme Judicial Court. Given this

long history of contentious litigation, the considerations relevant to the presumption of fairness

support a finding that the settlement is fair, reasonable, and adequate.

First, the settlement was rigorously negotiated at arms-length. The parties sharply disagreed about the strengths of the claims and defenses, but they were able to reach a compromise position that took all risks into account. Second, the settlement was reached after the parties engaged in substantial discovery. In addition to formal discovery, the Defendant produced sufficient records to calculate the exact amount of potential damages for the class. Third, Plaintiff's counsel has extensive experience litigating and settling cases brought under the Massachusetts wage laws. (Affidavit of Stephen Churchill ("Churchill Aff."), Ex. 4). The fourth element, concerning objections, cannot be addressed until after the claims process.

The total amount of the settlement – which was the product of extensive and prolonged negotiations – is fair, reasonable, and adequate in the context of this case. The maximum single damages in this case were calculated to be $76,803. The proposed settlement is over 1.8 times that amount. Because the actual damages are surely lower than $76,803, and potentially significantly lower, the settlement is actually more than 1.8 times single damages. Although Plaintiff believes he has a strong argument as to liability, there remain substantial risks, including the possibilities that the case would not be certified as a class action or that the damages actually recovered would be far less than expected. One obvious difficulty in the case is establishing the reason for each of the thousands of instances in which a class member worked a shift of less than three (3) hours in length.  If the case were not certified as a class action, only a handful of the class (and perhaps nobody other than Ms. Gammella) would recover lost wages; the vast majority would receive nothing at all. In short, relative to their potential damages, the settlement guarantees recoveries of what likely are at least single damages for eligible class members, while avoiding the delays and risks of litigation, including the risk of no recovery at all.

2.     **The proposed incentive payment is fair and reasonable.**

Courts have widely recognized that incentive awards serve an important function in promoting enforcement of state and federal law by private individuals, while encouraging class action settlements. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) ("Incentive awards are recognized as serving an important function in promoting class action settlements"), *quoting In re Lupron*, 228 F.R.D. 75, 98 (D. Mass. 2005); *In re Compact Disc Min. Adver. Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit"). As one court noted, "[s]ervice awards [i.e., incentive payments] are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. . . It is important to compensate plaintiffs for the time they spend and the risks they take." *Beckman*, 293 F.R.D. at 483 (citations omitted).

Incentive awards serve a particularly important role in employment class actions, where the lead plaintiffs may risk their livelihood to bring the case forward on behalf of their fellow co-workers. Courts have recognized the important role of class actions in the employment context precisely because of this fear of potential retaliation. *See, e.g., Gammella,* 482 Mass. at 10-11 (noting "'very legitimate policy rationales underlying Legislature's decision to provide for class proceedings under the Wage Act,'" including the need to "allow certain plaintiffs to come forward on behalf of others in the class who may fear retaliation") (citation omitted); *Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because "some class members may fear reprisal"); *Guzman v. VLM, Inc.*, 2008 WL

597186, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation"). This same consideration makes incentive awards appropriate in employment class action settlements, as well: "[Incentive] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

It is not uncommon for courts to approve incentive payments in the range of that requested in this case, and in even higher amounts, as recent cases demonstrate. *See, e.g., Dupuis v. Herbert G. Chambers*, Middlesex Civ. A. No. 1681CV03665 (Mass. Super. 2020) ($25,000 incentive payments for lead plaintiffs); *Wright v. Balise Motor Sales Co*., Suffolk Civ. A. No. 16-3477 BLS2 (Mass. Super. 2020) ($20,000 incentive payments for lead plaintiffs); *Ouadani v. Dynamex Operations East, LLC*, Civil Action No. 16-12036-PBS (D.Mass. Apr. 14, 2020) ($25,000 incentive payment for lead plaintiff). Indeed, it has long been the case that Massachusetts courts have awarded incentive payments in this amount or higher. *See, e.g., Godt v. Anthony's Pier Four, Inc.,* Suffolk Civ. A. No. 07-3919 (Mass. Super. 2009) ($25,000 incentive payment for lead plaintiff); *Shea v. Weston Golf Club*, Middlesex Civ. A. No. 02-1826 (Mass. Super. 2009) ($25,000 incentive payments for lead plaintiffs); *Fernandez v. Four Seasons Hotel,* Suffolk Civ. A. No. 02-4689 (Mass. Super. 2008) ($25,000 incentive payments for lead plaintiffs); *Banks v. SBH Corp.,* Mass. Civ. A. No. 04-3515 (Mass. Super. 2007) ($25,000 incentive payments for lead plaintiffs); *Meimaridis v. Brae Burn Country Club*, Middlesex Civ. A. No. 04-3769 (Mass. Super. 2006) ($25,000 incentive payments for lead plaintiffs)

The Plaintiff obviously played a critical role in this litigation. As a starting point, this case would not have been brought without him, because he volunteered to be named as a representative plaintiff, putting himself at risk. Not only was he willing to file suit against the Defendant, but he agreed to bring the case as a class action, thereby complicating his individual case and delaying any individual recovery. The Plaintiff assisted counsel repeatedly throughout the lawsuit, providing information about the Defendant's operations, responding to requests for information, sitting for a deposition, refusing individual settlement offers, and showing remarkable resilience in the face of a lengthy case. The Plaintiff also is being required to dismiss a discrimination claim and release all potential claims. Given the critical role that he played in this case, an incentive payment of $20,000 is fair and reasonable.

**3.     The court should preliminarily approve the proposed attorneys' fees and costs as fair and reasonable.**

With respect to fees and costs, the Court need not make a ruling until the time of final approval (when it can assess more detailed submissions and any objections), but the proposed allocation of fees and costs is facially reasonable. Class counsel in this case has extensive experience with employment law and with class litigation in the wage-and-hour context. (Churchill Aff., Ex. 4). Counsel has litigated a substantial number of wage-and-hour class actions, and has served as class counsel for numerous class action settlements, including multi-million dollar settlements involving large classes.

Courts generally favor an award of fees from a common fund, as called for by the proposed settlement in this case. As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole…. Jurisdiction over the fund involved in the litigation allows a Court to prevent…inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted). And when awarding fees from a common fund, the "percentage of the fund" method is preferred over the lodestar method. As the First Circuit observed, the percentage method is less burdensome to administer than the lodestar method. *In re Thirteen Appeals*, 56 F.3d 295, 307 (1st Cir. 1995). The court also endorsed the percentage method because it is result-oriented, and therefore promotes a more efficient use of attorney time – e.g., a lodestar method may give attorneys an incentive to spend as many hours as possible on the litigation and may discourage early settlements. *Id.*

An award of one-third of the fund is fair and reasonable in this case, for at least five reasons. First, the retainer agreements signed by the named plaintiffs provide for a one-third contingency payment, which is very common for employment cases where individuals cannot pay hourly fees.

Second, awarding one-third from the common fund recognizes the vital role that contingency arrangements play in making legal counsel available to individuals who cannot afford hourly fees. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate"). Unlike traditional firms that receive hourly fees on a monthly basis, firms take cases on contingency often spend years litigating cases (typically while incurring significant out-of-pocket expenses for experts, transcripts, travel, etc.), without receiving *any* ongoing payment for their work. Sometimes fees and expenses are recovered; other times, despite hundreds of hours of work and thousands of dollars in expenses, nothing is recovered. This type of practice is viable only if attorneys, having received nothing for their work on some cases, receive more in other cases than

12

they would if they charged hourly fees. Courts have long recognized this reality. By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them. That access is particularly important for the effective enforcement of public protection statutes, such as the wage laws at issue in this case. It is well recognized that "private suits provide a significant supplement to the limited resources available to [government enforcement agencies] for enforcing [public protection] laws and deterring violations." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) (addressing anti-trust laws). This reasoning applies with equal force to wage and hour claims. *Skirchak v. Dynamics Research Corp., Inc.*, 432 F. Supp. 2d 175, 179 (D.Mass.), *aff'd* 508 F.3d 49 (1st Cir. 2007). Notably, class counsel here are still litigating cases that were filed years ago, and their firm has advanced significant sums in out-of-pocket expenses to pursue litigation on behalf of workers in various types of employment cases, including wage and hour and discrimination cases.

Third, awarding fees from a common fund incentivizes parties to discuss settlement early and reach an early resolution of a case, if possible. Indeed, it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Frank*, 228 F.R.D. at 188 (granting 40% fee request).

Fourth, awarding fees from a common fund recognizes that firms may spend years developing the case law in a particular field and obtaining favorable decisions, all of which contributes to early resolution of later cases. *See In re Giant Interactive Group Inc. Sec. Litigation*, 2011 WL 5244707, *10 (S.D.N.Y. Nov. 2, 2011) ("[T]he Court finds [th]at public policy supports the award of a 33% fee in this case, the better to 'attract well-qualified Plaintiff's counsel who are able to take a case to trial, and who defendants understand are able and willing

13

to do so.'"), *quoting In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d. 319, 359 (S.D.N.Y. 2005). Here, more specifically, class counsel has extensive experience litigating class action wage cases and has contributed to the development of the law in this area.

Fifth, even if the Court found it necessary to consider the amount of the requested fees relative to the current lodestar, the requested fees are reasonable given the extensive litigation that preceded this settlement. To date, the lodestar for class counsel in this case already exceeds the proposed fees, and significant additional legal time will be necessary in this case, including on the claims and approval process, coordination with a third party administrator, hearings, and communications with class members. (Churchill Aff., Ex. 4).

**4.      The court should certify a settlement class for settlement purposes.**

The proposed settlement class is appropriate for settlement purposes. *See Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only"). Certification for purposes of settlement has well-recognized practical purposes, including the issuance of notice to class members and implementation of a global settlement. *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (outlining reasons for preliminary class certification for settlement).

**Conclusion**

For the foregoing reasons, the Plaintiffs respectfully request that the Court preliminarily approve the class settlement, approve the form of notice attached as Ex. 2, and enter the proposed order attached as Ex. 3.

Respectfully submitted,

FELICE GAMMELLA, on behalf of himself and others similarly situated,

By his attorneys,

/s/ Stephen Churchill
Stephen Churchill, BBO#564158
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
(617) 488-2261 (fax)
steve@fairworklaw.com

Dated: March 8, 2021

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this date I served a copy of the foregoing document, by electronic mail, on Defendant's counsel

Dated:  March 8, 2021                    /s/ Stephen Churchill
                                        Stephen Churchill

45610453.1

16

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT

SUFFOLK, SS.                                            Civil Action No. 14-3703

_____   )
                                   )
FELICE GAMMELLA, on behalf of      )
himself and all others similarly situated,  )
                    Plaintiff      )
v.                                 )   E-Filed 03/08/2021          (NJ)
                                   )
P.F. CHANG'S CHINA BISTRO, INC.,   )
                    Defendant      )
_____   )

**AFFIDAVIT OF STEPHEN CHURCHILL**

    I, Stephen Churchill, state as follows.

    1.    I am a 1988 graduate of Stanford University and a 1993 graduate of Harvard Law School. Following my admission to the Massachusetts bar in 1993, I have focused primarily on employment law.

    2.    After graduating law school, I worked for one year at a plaintiff's employment firm, followed by ten years at Conn Kavanaugh, a 20-plus attorney firm in Boston, where I worked as an associate and then a partner. During my time at Conn Kavanaugh, I represented both employees (in discrimination, non-compete, and other cases) and employers (including cases for Raytheon Company; Metropolitan Life Insurance Company; Avon Products, Inc.; and numerous smaller employers). From 2004 to 2010, I worked at Harvard Law School as a Clinical Instructor, running the Employment Civil Rights Clinic at the WilmerHale Legal Services Center. From 2007 to the present, I have taught at least two employment law courses each year at Harvard Law School, one focusing on advocacy skills and one focusing on the enforcement of employment laws. I continue to direct the law school's employment law clinic. From 2010 to 2013, I worked at

Lichten & Liss-Riordan, P.C., a nationally-recognized employment law firm, handling both individual and class action litigation on behalf of employees. In 2013, I co-founded Fair Work, P.C., a firm dedicated to representing employees in workplace disputes, including both individual and complex class action cases. Over the course of my career, I have worked as plaintiffs' counsel in numerous class actions, in both Massachusetts and other states.

3.      Over the course of my career, I have been counsel on numerous reported cases, in both state and federal court. I have worked individually or with co-counsel to obtain favorable rulings in the following more recent cases, among other cases, *Gammella v. P.F. Chang's China Bistro, Inc.*, 482 Mass. 1 (2019), *Sullivan v. Sleepy's LLC*, 482 Mass. 227 (2019), *Lavery v. Restoration Hardware Long Term Disability Benefits Plan*, 937 F.3d 71 (1st Cir. 2019), *Ouadani v. TF Final Mile LLC*, 876 F.3d 31 (1st Cir. 2017), *Malebranche v. Colonial Automotive Group*, 2017 WL 5907557 (Mass. Super. Ct. Oct. 20, 2017), *Mooney v. Domino's Pizza, Inc.,* 2016 WL 4576996 (D.Mass. Sep. 1, 2016), *Reeves v. PMLRA Pizza, Inc.,* 2016 WL 4076829 (D.Mass. Jul. 29, 2016), *Craig v. Sterling Lion, LLC,* 2016 WL 239299 (Mass. App. Ct. Jan. 21, 2016), *Smith v. City of Boston,* 144 F. Supp. 3d 177 (D.Mass. 2015), *Vitali v. Reit Management & Research, LLC*, 88 Mass. App. Ct. 99 (2015), *Carpaneda v. Domino's Pizza, Inc.,* 89 F. Supp. 3d 219 (D.Mass. 2015), *Parham v. Wendy's Co.*, 2015 WL 1243535 (D.Mass. Mar. 17, 2015), *Carpaneda v. Domino's Pizza, Inc.,* 991 F. Supp. 2d 270 (D.Mass. 2014), *Torres v. Niche, Inc.*, 2013 WL 6655415 (D.Mass. Dec. 18, 2013), *Depianti v. Jan-Pro Franchising International, Inc.*, 465 Mass. 607 (2013), *Lopez v. Commonwealth of Massachusetts*, 463 Mass. 696 (2012).

4.      In addition, I have been asked to draft amicus briefs on employment law issues, including one case before the Supreme Judicial Court – *Cook v. Patient Edu, LLC*, 465 Mass. 548 (2013) – and two before the First Circuit – *Jones v. City of Boston*, 752 F.3d 38 (1st Cir. 2014) and *Jones v. City of Boston II*, 845 F.3d 28 (1st Cir. 2016).

5.      I also tried numerous cases, including cases in federal court, in state court, in arbitration, and in administrative agencies (including the Massachusetts Commission Against Discrimination) and have won substantial verdicts and judgments on behalf of employees.

6.      I have spoken on or moderated a number of panels addressing employment law issues, including the following recent examples, among others:

- Massachusetts Continuing Legal Education, Boston, MA. Speaker on panel about independent contractor misclassification. October 2019

- Massachusetts Continuing Legal Education, Boston, MA. Speaker on panel about independent contractor misclassification. November 2018

- Massachusetts Continuing Legal Education, Boston, MA. Speaker on panel about wage & hour primer & update. May 2017

- Boston Bar Association, Boston, MA. Speaker on panel about fee shifting in employment cases. October 2016.

- Boston Bar Association, Boston, MA. Speaker on panel about developments under the Class Action Fairness Act. February 2016.

- Volunteer Lawyers Project, Boston, MA. Faculty for training about wage and hour litigation. January 2016.

- Massachusetts Continuing Legal Education, Boston, MA. Speaker on panel about litigating under fee-shifting statutes. October 2015.

- Massachusetts Continuing Legal Education, Boston, MA. Speaker on panel about preventing and litigating wage and hour cases. May 2015.

- Boston Bar Association, Boston, MA. Speaker on panel about mediating employment cases. February 2015.

- Massachusetts Continuing Legal Education, Boston, MA. Speaker on panel about arbitrating employment cases. December 2013.

- National Employment Lawyers Association, Chicago, IL. Speaker on plenary panel about developments and trends in class action arbitration. March 2013.

- Harvard Law School, Moderator for panel on *Lilly Ledbetter* case: May 2012.

- Boston Bar Association, Boston, MA. Speaker for program on *ATT Mobility v. Concepcion* - Cases, Trends & Issues: March 2012.

7.     I also have written a number of articles or papers on employment law

matters, including the following:

- *Workers' Rights in the Balance*, Harvard Law and Policy Review Blog, Oct. 2016.

- *Arbitrating Employment Discrimination Cases (Or Not)*, Massachusetts Continuing Legal Education Employment Law Conference, Dec. 2013.

- *Making Employment Civil Rights Real,* Amicus (online supplement to Harvard Civil Rights-Civil Liberties Law Review) (October 2009).

- *Recent Developments Under the Massachusetts Wage Act,* Massachusetts Continuing Education Business Litigation Conference (February 2003).

- *A Fly In The Web: The Developing Law of Reasonable Accommodations*, Boston Bar Journal (November/December 2002).

- *Recent Legislation, Bills, and Agency Materials and Selected Cases Under Other Employment Statutes,* Massachusetts Continuing Legal Education Employment Law Conference (December 2001).

- *The Family & Medical Leave Act*, Lorman Education Services (June 2001).

- *Selected Legislative and Regulatory Developments,* Massachusetts Continuing Legal Education Employment Law Conference (December 2000).

- *Reasonable Accommodations in the Workplace: A Shared Responsibility,* 80 Mass. L. Rev. 73 (1995).

8. To date, I have worked well over 90 hours on this case. At the rate of $600 per

hour (the rate at which I was most recently awarded fees by a court), my current lodestar

4

is approximately $54,000. I expect to spend extensive amounts of additional time after

the preparation of this affidavit working on this case, including on the claims

administration process, the motion for final approval, communications with class

members, and completing the administration of the proposed settlement.


     Signed under the penalties of perjury this 8th day of March, 2021.


             /s/ Stephen Churchill
             Stephen Churchill